UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2021 OCT 22 PM 3:42
MARGARET BOTKINS, CLERK
CASPER

| | |
|---|---|
| ROBERT A. ZIEGLER; GARTH YATES, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS, <br><br> Plaintiffs, <br><br> v. <br><br> RICHARD P. DALE, JR.; BUFFETT SENIOR HEALTHCARE CORP.; SENIOR HEALTHCARE PARTNERS, INC.; RJR INSURANCE SERVICES, INC. <br><br> Defendants. | Civil Action No.: 18-CV-71-SWS |

## ORDER GRANTING FINAL SETTLEMENT APPROVAL

Before the Court is Plaintiffs' Unopposed Motion for Final Approval. Doc. 183. The Court held a Final Fairness Hearing on October 22, 2021. Having considered Plaintiffs' Motion and arguments of counsel, the Court GRANTS the Motion for Final Approval. As set forth in detail below, the Court (1) grants final approval to the Parties' Rule 23 settlement; (2) grants final certification of the Rule 23 class for purposes of settlement; (3) approves the Class Representatives' service awards; and (4) approves Class Counsel's request for attorneys' fees and costs.

### I. FACTUAL AND PROCEDURAL BACKGROUND

**A.    The Underlying Action**

Plaintiff Robert Ziegler filed this case on May 3, 2018, alleging that the Defendants marketed and sold benefit plans called My Senior Healthcare Partners ("MySHP") plans to elderly citizens that did not contain the benefits the plans promised. *See* Doc. 1. Plaintiff filed

1

this case as a class action, on behalf of himself and the putative class of "[a]ll persons in the United States who purchased one-time payment MySHP policies with MASA benefits, for life, plus a beneficiary," and he named all four Defendants presently in this action. *Id.* The Complaint asserted causes of action for fraud, breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment. *Id.*

Plaintiffs allege that Defendants' sale of MySHP plans to senior citizens contained illusory air ambulance benefits, for the life of the purchaser (and spouse, if applicable), plus a beneficiary. Doc. 183, at 3. In addition to air ambulance, MySHP plans advertise various benefits, from prescription drugs to pet medications, e-cigarettes, and nutritional supplements. *Id.* A purchaser could select one or more of these benefits for a small monthly fee (either $10 or $30 depending on the chosen benefit), or all of them for $99 per month for an individual plus a beneficiary or $129 per month for two individuals plus a beneficiary. *Id.* Alternatively, for one-time payments of $1299, or $1599 to add a spouse, a MySHP purchaser could obtain all benefit options, including air ambulance benefits, for life, plus a beneficiary to inherit those benefits for their lifetime. *Id.*

Plaintiffs Ziegler and Yates both purchased MySHP plans, and both selected the $1599 options and designated their beneficiaries. *Id.* Plaintiffs allege that, after they purchased their MySHP plans, they learned from the Defendants' agent, Frank Mathson, that the MySHP plans did not have air ambulance benefits and could not be inherited. Plaintiffs further allege that Mathson learned this when the air ambulance provider called and informed him that Defendant Buffett Senior Healthcare Corp. was not authorized to sell such plans. *Id.*

**B.  The Parties' Mediation and Settlement**

After resolution of several motions to dismiss, discovery followed for approximately one year. During this time, Plaintiff also filed a series of amended pleadings which, among other things, resulted in Mr. Yates joining Mr. Ziegler as Co-Plaintiff. *See* Docs. 42, 115, 128.

Beginning on September 5, 2019, the parties held the first of a series of mediations before Chief Magistrate Judge Kelly H. Rankin. Doc. 183, at 4. This first mediation resulted in a Memorandum of Understanding ("MOU") between the Parties, whereby they agreed to pursue a final settlement in which Mr. Dale, in exchange for releases, would make a payment from the proceeds of a sale of his condominium located in Dallas, Texas. *Id.* Pursuant to this MOU, two independent appraisers provided estimates of the condominiums' value, and the completed appraisals estimated values of $1,550,000 and $1,500,000, respectively. *Id.* The MOU allowed Mr. Dale 12 months to sell the condominium after the appraisals. *Id.*

The Parties held a second mediation on April 29, 2020 and agreed that, given the circumstances imposed by the spread of COVID-19, it was more advantageous and efficient for Mr. Dale to seek a mortgage for the full value of the condominium and pay the settlement proceeds from the mortgage loan. *Id.* at 4-5. But while Mr. Dale sought a mortgage lender, his Homeowner's Association ("HOA")[1] foreclosed on his condominium pursuant to an assessment lien granted by Texas Property Code § 82.113. *Id.* at 5. The HOA sold the home for $700,000, and Mr. Dale did not exercise his right to redeem the property. *Id.*

The parties mediated a third time on December 16, 2020, which resulted their Settlement Agreement. *Id.* The Parties agreed therein to settle all claims in exchange for Defendants' payment of a $500,000 common fund for the benefit of Settlement Class Members, plus up to $10,000 for settlement administration. *Id.* The parties defined the Settlement Class as members

---

[1] Plaza at Turtle Creek Residences Association, Inc.

3

of the MySHP 1299 or 1599 plans, and they agreed to a *pro rata* percentage return of each member's $1299 or $1599, after deduction of court-approved attorneys' fees, expenses, and incentive awards. *Id.*

The Settlement amount consists of a non-reversionary common fund of Five Hundred Ten Thousand Dollars ($510,000), distributed as follows:

- **$296,749** for distribution to Class Members;
- **$166,667** for attorneys' fees;
- **$26,584** for litigation expenses;
- **$10,000** for incentive payments to Plaintiffs, $5,000 each; and
- **$10,000** for payment to the Settlement Administrator.

*Id.* at 6.

## C.  Preliminary Approval and Notice

Plaintiffs filed an Unopposed Motion for Preliminary Approval and to Approve Notice on June 21, 2021. *See* Doc. 174. The Court granted Plaintiffs' Motion and ordered distribution of the proposed settlement to the class on June 23, 2021. *See* Doc. 175. After evaluating and verifying Class Members' last known contact information supplied by Defendants, the Settlement Administrator sent notices by First Class U.S. Mail to the 361[2] of 374 MySHP purchasers whose last known addresses were identified by Defendants' business records. Doc. 183, at 5. Of the 361 notices mailed, 18 were returned as undeliverable—eight of which were 1299 plan purchasers, and ten of which were 1599 plan purchasers. *Id.* The Settlement Administrator located updated addresses for six spouses of the ten 1599 plan purchasers and

---

[2] Class notice was not sent to Class Representative Robert Ziegler.

mailed notice to those addresses. *Id.* Neither the Settlement Administrator nor Plaintiffs' counsel received any objections or opt out requests from class members. *Id.*

The Parties attended a Final Fairness Hearing on October 22, 2021. Doc. 185. No objections were lodged at or before the Final Fairness Hearing, and the parties agreed to the entry of this final approval and stipulated to the entry of a permanent injunction.

Having considered the Parties' submissions and arguments at the Final Fairness Hearing, the Court now issues this Order granting final approval of the Parties' Rule 23 Class Action Settlement.

## II.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The Court has considered the submissions, evidence, and authorities and finds that the proposed class is appropriate for certification for purposes of settlement. The Court, therefore, certifies the following class for purposes of settlement:

> All purchasers of $1299 or $1599 lifetime My Senior Healthcare Partners plans with air ambulance benefits.

The Court finds that the class meets applicable requirements for class certification under FED. R. CIV. P. 23 because:

1. The Class Members are so numerous that joinder of all members is impracticable;

2. There are questions of law and fact common to the class;

3. The claims of the Class Representatives are typical of the claims of the class;

4. The Class Representatives and Class Counsel have fairly and adequately protected the interests of the class;

5. Common questions of fact and law predominate over any questions affecting only individual members; and

6. Class action treatment is superior to other available methods for adjudicating this controversy.

Because the Class satisfies FED. R. CIV. P. 23's requirements, the Court certifies the Class for purposes of settlement.

### III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Federal Rules of Civil Procedure require that proposed class action settlements be submitted for court approval. FED. R. CIV. P. 23(e). To approve a proposed settlement, a court must determine whether the settlement is "fair, reasonable, and adequate." *Id.*; *see also Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984). "[A]pproval of a class action settlement is committed to the sound discretion of the court, *Wilkerson,* 171 F.R.D. at 283, and "in exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharmacy, Inc.,* 741 F.2d 322, 324 (10th Cir. 1984)).

Rule 23 directs courts to determine whether proposed settlements are fair, reasonable, and adequate upon considering whether:

- (A) the class representatives and class counsel have adequately represented the class;
- (B) the proposal was negotiated at arm's length;
- (C) the relief provided for the class is adequate, taking into account:
  - (i) the costs, risks, and delay of trial and appeal;
  - (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  - (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
  - (iv) any agreement required to be identified under Rule 23(e)(2); and
- (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P.; *Montgomery v. Continental Intermodal Group-Truckling, LLC,* 2021 WL 1339305, at *3-4 (D.N.M. April 9, 2019).

6

A.  **The Settlement satisfies Rule 23(e)(2) factors.**

1. **Rule 23(e)(2)(A): The class representatives and class counsel have adequately represented the class.**

This factor "focuses 'on the actual performance of counsel acting on behalf of the class.'" *Montgomery,* 2021 WL 1339305, at *4 (quoting FED. R. CIV. P. 23, Advisory Committee Notes).

The Court finds that Plaintiffs' counsel thoroughly prosecuted this case and, through discovery, had "an adequate appreciation of the merits of the case before negotiating" in mediation. *Montgomery,* 2021 WL 1339305, at *4 (quoting *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 531 (3d Cir. 2004)). Class Counsel have experience in the litigation, certification, and settlement of class actions similar to this case, and the Court finds they have achieved a favorable settlement for the Class Members. *See id.* (quoting *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 313 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (add'l citations omitted). The Court further finds that Mr. Ziegler and Mr. Yates adequately represented the Class.

2. **Rule 23(e)(2)(B): The Parties negotiated the Proposed Settlement at arm's length.**

This factor "focuses on whether the settlement negotiations 'were conducted in a manner that would protect and further the class interests.'" *Montgomery,* 2021 WL 1339305, at *5 (quoting FED. R. CIV. P. 23 Advisory Committee Notes). Similarly, "[w]hen examining whether a settlement was fairly and honestly negotiated, district courts within the Tenth Circuit often examine whether the parties 'have vigorously advocated their respective positions throughout the pendency of the case.'" *In re Thornburg Mortg., Inc. Securities Litig.,* 912 F. Supp. 2d 1178, 1241 (D.N.M. 2012) (quoting *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 284 (D.

7

Colo. 1997)). Courts are also "required 'to ensure that the agreement is not illegal, a product of collusion, or against the public interest.'" *Childs v. Unified Life Ins. Co.,* 2011 WL 6016486, at *12 (N.D. Okla. Dec. 2, 2011) (quoting *United States v. State of Colorado,* 937 F.2d 505, 509 (10th Cir. 1991)).

In this case, the Parties' negotiated the Settlement at arm's length over the course of three mediation sessions before Chief Magistrate Judge Kelly Rankin, who is both an experienced mediator and familiar with the facts underlying this case. *See Montgomery,* 2021 WL 1339305, at *5 (quoting 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."); *see also Tripp v. Rabin,* 2016 WL 3615572, at *3 (D. Kan. July 6, 2016) ("The contested nature of this suit, the engagement of a neutral mediator, and the extensive negotiation process constitute evidence that the parties negotiated the settlement agreement fairly and honestly."); *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.").

3. **Rule 23(e)(2)(C)(i): The relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal.**

This factor "recognizes that while 'the relief that the settlement is expected to provide to class members is a central concern,' such relief must be viewed in relation to 'the cost and risk involved in pursuing a litigated outcome.'" *Montgomery,* 2021 WL 1339305, at *5 (quoting FED. R. CIV. P. 23 Advisory Committee Notes).

While Plaintiffs' contend their case is strong, they acknowledge that trial nonetheless has risk that this Settlement avoids. Defendants dispute the merits of each of Plaintiffs' claims and assert numerous affirmative defenses, including that MySHP purchasers received every benefit

they purchased; that MySHP plans expressly state that benefits provided thereunder may be changed; and that alleged misrepresentations were carried out by non-parties outside the scope of their agency. *See, e.g., M.B. Howard,* 2021 WL 295882, at *5 (D. Kan. Jan. 28, 2021) ("Defendants assert 49 more defenses to plaintiffs' claims. Id. at 42–49. If the parties continue litigating, serious questions of law and fact will sharpen and, it appears to the court, they place the ultimate outcome in doubt. The court finds this factor favors approving the Settlement Agreement.").

The Settlement will also avoid delay that will likely be significant. The discovery period has not ended, Defendants have not yet filed motions for summary judgment, and Plaintiffs' have not yet moved for class certification. The non-prevailing party at either summary judgment, class certification, or trial is likely to appeal any unfavorable decision.

Finally, the Court finds that the Settlement reflects the factual realities of Defendants' ability to pay. Their financial condition[3] was a central issue in all mediations. Doc. 183, at 23. Due to Mr. Dale's lack of liquid assets, the Parties initially agreed that he would sell his condominium, which had appraised values of $1,550,000 and $1,500,000. *Id.* After a second mediation, Mr. Dale agreed to seek a mortgage on the condominium for $1,550,000. *Id.* But after the foreclosure sale on his condominium, the Parties were left with less than $700,000 in liquid assets to cover a settlement. *Id.* As part of the Settlement, Defendants produced financial information to Class Counsel, which confirmed that the Settlement accurately reflects Defendants' ability to pay. *Id.*; *see also Wornicki v. Brokerpriceopinion.com, Inc.,* 2017 WL 3283139, at *3 (D. Colo. Aug. 2, 2017) ("The parties exchanged information demonstrating defendants' inability to pay a larger judgment and plaintiffs determined that, in light of

---

[3] All corporate Defendants are wholly owned by Defendant Richard Dale.

9

defendants' financial situation, settlement was in the best interests of the class. Accordingly, the Court finds that the settlement reflects the factual realities of the case, which cast doubts on the benefits of further litigation."); *Alvarado Partners, L.P. v. Mehta,* 723 F. Supp. 540, 547-48 (D. Colo. 1989) (in approving settlement, considering potential of settling defendant's bankruptcy if litigation continues, making recovery from it questionable); *see also id.* at 547 ("It has been held prudent to take "a bird in the hand instead of a prospective flock in the bush.") (quoting *State of West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 740 (S.D.N.Y.1970)). The Court finds this factor also favors final approval.

4. **Rule 23(e)(2)(C)(ii): The relief provided to the class is adequate, taking into account the effectiveness of any proposed method of distributing relief to the class including the method of processing class-member claims if required.**

This factor asks courts to "'scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims'" and states they "'should be alert to whether the claims process is unduly demanding.'" *Montgomery,* 2021 WL 1339305, at *6-7 (quoting FED. R. CIV. P. 23 (Advisory Committee Notes)). The Court finds this factor satisfied because the notice was the best notice practicable under the circumstances and provided adequate notice to the class.

In its Order Preliminarily Approving Rule 23 Settlement and Approving Notice to the Proposed Class, the Court approved the form and notice of the Proposed Settlement Notice. *See* Doc. 175. The Court further finds that the Class notice fully and accurately informed the Class Members of all material elements of the Proposed Settlement, including their request for an award of attorneys' fees at one-third of the Settlement fund, for $5,000 incentive awards to each Class Representative, and expected minimum recoveries for Class Members.

After the Court's order granting preliminary approval, the Settlement Administrator sent notices by First Class U.S. Mail to the 361 of 374 MySHP purchasers for whom Defendants provided last known addresses through their business records. Doc. 183, at 5. Of the 361 notices

10

mailed, 18 were returned as undeliverable—eight of which were 1299 plan purchasers, and ten of which were 1599 plan purchasers. *Id.* at 5-6. The Settlement Administrator located updated addresses for six spouses of the ten 1599 plan purchasers and mailed notice to those addresses. *Id.* at 6. Neither the Settlement Administrator nor Plaintiffs' counsel have received any objections or opt out requests from class members. *Id.* Nor has the Court.

Payment processing will impose minimal, if any, burden to Class Members. The Settlement Administrator will issue their checks and, for a small number of Class Members, it may require additional information to comply with Internal Revenue Service Regulations, such as their social security number or tax identification numbers. *Id.* at 24. The Court finds this factor is also satisfied.

5. **Rule 23(e)(2)(C)(iii): The relief provided for the class is adequate, taking into account the terms of any proposed award of attorney's fees, including the timing of payment.**

"This factor recognizes that '[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement.'" *Id.* (quoting FED. R. CIV. P. 23 (Advisory Committee Notes)).

Under the equitable "common fund" doctrine, attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs out of the fund, and their fees are traditionally calculated as a percentage of the total fund. *See Farley v. Family Dollar Stores, Inc.,* 2014 WL 5488897, at *3 (D. Colo. Oct. 30, 2014) ("The Tenth Circuit has recognized that attorney's fees may appropriately be awarded from [a common] fund.") (citing *Gottlieb v. Barry,* 43 F.3d 474, 482 (10th Cir. 1994)); *Gottlieb,* 43 F.3d at 482-83 (affirming viability of the "percentage of the fund" method of calculating attorneys' fees in common fund cases and endorsing use of twelve factors developed in *Johnson v. Ga. Hwy. Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) to determine appropriateness of the award).

11

Class counsel seeks an award of attorneys' fees equaling one-third of the total settlement payment, amounting to $166,667, in addition to $26,584 for litigation costs and expenses. Doc. 183, at 25. This amount of attorneys' fees is within the range of reasonable and customary class action settlements in the Tenth Circuit and in general. *See, e.g., Cimarron Pipeline Constr., Inc. v. Nat'l Counsel on Comp. Ins.,* 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Anderson v. Merit Energy Co.,* 2009 WL 3378526, at *3 (D. Colo. 2009) ("The customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class."); *Lucas v. Kmart Corp.,* 2006 WL 2729260, at *6 (D. Colo. July 27, 2006) (stating 30% of the common fund is the customary fee award under the percentage of the fund approach); *see also Newberg on Class Actions* § 14:6, at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

Courts in the Tenth Circuit evaluate the reasonableness of attorneys' fees awards using twelve factors:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Aragon v. Clear Water Prod. LLC,* 2018 WL 6620724, at *4 (D. Colo. Dec. 18, 2018) (citing *Johnson,* 488 F.2d at 454-55).

These factors favor the requested fee award. Plaintiffs' counsel are experienced in class actions and have dedicated over 1,200 hours to this case in research, motions practice, discovery,

mediation, and settlement and administration. Doc. 183, at 26. At the hourly rates submitted by Class counsel, their aggregate hours amount to a total lodestar of almost $900,000—over five times the requested fee award here. *See id.* The Court finds that Class counsel's time was necessary during both litigation and mediation of this case. Defendants opposed Plaintiffs at all phases of this litigation, and multiple mediations were required to reach a settlement. *See* Docs. 27-29, 34, 51, 59, 76, 85. Despite Defendants' limited assets, Class Members will still receive at least $877 or $712 each.

Finally, under the Tenth Circuit's "percentage of the fund" method, Class counsel's requested fee of one-third[4] is well within the range consistently approved by courts in this Circuit. *See, e.g., Cimarron,* 1993 WL 355466, at *2; *Anderson,* 2009 WL 3378526, at *3; *Lucas,* 2006 WL 2729260, at *6; *see also See also Candelaria v. Health Care Serv. Corp.,* 2020 WL 6875828, at *3 (D.N.M. Nov. 4, 2020) (approving 35% fee award); *Barbosa v. Nat'l Beef Packaging Co., LLC,* 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015) (awarding 33% fee); *Fankhouser v. XTO Energy, Inc.,* 2012 WL 4867715, at *3 (W.D. Okla. Oct. 12, 2012) (awarding 36% fee).

The Court finds the Settlement is adequate taking into account the requested attorneys' fees and litigation costs. In addition, the Court approves Class Counsel's requested fee of 33% of the Settlement fund and, accordingly, approves the disbursement of attorneys' fees to Class counsel in the amount of $166,667 and of litigation expenses in the amount of $26,584.

6. **Rule 23(e)(2)(C)(iv): The relief provided for the class is adequate, taking into account any agreement required to be identified under Rule 23(e)(2).**

---

[4] Counsel's representation agreement with Plaintiff Ziegler permits recovery of a 40% contingency fee. Doc. 183, at 27 n.12.

13

Pursuant to Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. This factor is satisfied because the Settlement Agreement and prior memoranda of understanding are already on file with this Court, and there are no other agreements between the parties. *See* Docs. 174-1, 174-3, 174-5.

7. **Rule 23(e)(2)(D): The proposal treats class members equitably relative to each other.**

This factor "seeks to prevent the 'inequitable treatment of some class members vis-à-vis others." *Montgomery,* 2021 WL 1339305, at *8. (quoting FED. R. CIV. P. 23 (Advisory Committee Notes)). "'Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Id.*

In this case, all class members assert claims arising from their respective purchase of lifetime MySHP plans with air ambulance benefits, either for $1299 or $1599. The Settlement payments to each class member will be calculated on a *pro rata* percentage basis, depending on which of these two plans he or she purchased. As such, 1299 and 1599 MySHP plan purchasers will receive at least $877 or $712 each, respectively. The Court finds this treats Class Members equitably relative to each other.

The Settlement Agreement also provides for an award of incentive payments of $5,000 to compensate each Plaintiff for their efforts and to recognize their willingness to litigate this case on behalf of the Class. "Incentive awards are fairly typical in class action cases." *Fager v. Centurylink Comms., LLC,* 2015 WL 13298517, at *8 (D.N.M. June 25, 2015) (citing 4 William B. Rubenstein, et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008)); *see also Ponca Tribe of*

*Indians of Okla. V. Cont'l Carbon Co.,* 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) ("The practice of granting incentive awards to Class Representatives is common and widespread in class litigation.") (citing cases). Compensable services "typically include 'monitoring class counsel, being deposed by opposing counsel, keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Chieftain Royalty Co. v. Enervest Energy Inst'l Fund XIII-A, L.P.,* 888 F.3d 455, 468 (10th Cir. 2017) (citing 5 William B. Rubenstein, *Newberg on Class Actions* § 17:3 (5th ed. 2016)); *see also id.* (also noting that class representatives made themselves available by telephone during mediation). "Courts have [also] recognized that an award may be appropriate to provide an incentive to act as a named Plaintiff." *Chieftain,* 888 F.3d at 467 (citing *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 722-23 (7th Cir. 2001)).

In this case, Plaintiff Ziegler participated in, and assisted class counsel with, initial case investigation and filing of the complaint, and he has remained informed of the litigation's progress. Doc. 183, at 28. Despite suffering a heart attack in the fall of 2019, Mr. Ziegler has remained a class representative, though Mr. Yates joined as class representative upon filing the Fourth Amended Complaint to assist due to Mr. Ziegler's health problems. *Id.* at 28-29. Both have remained informed of the litigation and made themselves available during the several mediation sessions, and both have served as client for purposes of approving proposed settlements with Defendants. *Id.*; *see also Chieftain,* 888 F.3d at 468. The Court further finds an award is also appropriate as incentive for Mr. Ziegler's and Mr. Yates's willingness to serve as representatives on behalf of the class. Therefore, the Court approves the incentive payments to Mr. Ziegler and Mr. Yates in the amounts of $5,000 each.

**B.      The Settlement satisfies 10th Circuit factors.**

In evaluating the fairness of class action settlements, Courts in the Tenth Circuit also consider:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks,* 314 F.3d at 1189 (citations omitted); *Jones,* 741 F.2d at 324.

As noted above, the Settlement arises after a year of contested litigation and discovery, followed by three mediations and negotiations spanning over a year. The Settlement was negotiated at arm's length between experienced counsel before Chief Magistrate Judge Rankin. Thus, "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas,* 234 F.R.D. at 693; *see also Tripp,* 2016 WL 3615572, at *3.

Serious questions of law and fact exist that will sharpen if discovery continues, which create uncertainty in establishing liability, damages, and class certification. *See M.B. Howard* 2021 WL 295882, at *5; *see also Montgomery,* 2021 WL 1339305, at *9 (quoting *Lucas,* 234 F.R.D. at 693-94) ("Although it is not the role of the Court at this stage of the litigation to evaluate the merits, 'it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated."). The Defendants' financial condition and ability to pay were also central to the Parties' settlement negotiations. As noted above, the Parties exchanged financial information, which confirmed to Class counsel that the Settlement accurately reflects the Defendants' ability to pay. This casts substantial doubt on the benefits of further litigation. *See Wornicki,* 2017 WL 3283139, at *3.

For these reasons, the Court further finds the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. Despite Defendants' limited ability to pay, each Class Member will receive over half the costs of their MySHP plans. As noted above, discovery is incomplete, Defendants have not filed motions for summary judgment, Plaintiffs have not moved for class certification, and appeals would likely follow any unfavorable decision. *See* 2021 WL 1339305, at *10 ("Thus, the value of immediate recovery here is substantial, and the possibility of future recovery for the Class is by no means likely, let alone guaranteed. The benefits of a guaranteed recovery today outweigh an uncertain result several years in the future.").

Finally, the Parties believe the Settlement to be fair and reasonable, and no Class Members have objected or opted out. Class counsel are experienced in class action litigation and are well acquainted with the facts, legal theories, and risks underlying this case. Class counsel fully support the Settlement as fair and reasonable, and their "judgment as to the fairness of the agreement is entitled to considerable weight." *Montgomery,* 2021 WL 1339305, at *10 (quoting *Lucas,* 234 F.R.D. at 695); *Acevedo,* 2019 WL 6712298, at *3 (same); *McNeely,* 2008 WL 4816510, at *13 (same).

Upon consideration of these factors and the evidence presented, the Court finds that the Settlement is fair, reasonable, and adequate. The Court finds that the Settlement results from arms-length negotiations by experienced counsel, for a Class represented by Class Representatives who adequately protected the Class Members' interests. The Court further finds that the Settlement provides substantial relief to the Class Members, especially considering the factual realities of this case.

Therefore, the Court finds that the Settlement Agreement meets the requirements for final approval pursuant to FED. R. CIV. P. 23 and orders that the Settlement be completed in accordance with its terms. The Court finds that Class Members were given adequate notice and a fair and reasonable opportunity to object or opt out. No Class Member objected to or opted out of the Settlement. This Order is binding on all Class Members.

The Court further approves the releases provided in the Settlement Agreement. The Released Claims are compromised, settled, released, and dismissed with prejudice by virtue of this Order. The Court DISMISSES this action WITH PREJUDICE and reserves jurisdiction with respect to future performance of the terms of the Settlement Agreement and enforcement of the agreed injunction addressed by separate order.

ORDERED: 22nd of Oct. , 2021

Scott W. Skavdahl
Chief United States District Judge